THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CRIMINAL CASE NO. 1:08-cr-00015-MR-WCM

| | |
|---|---|
| UNITED STATES OF AMERICA, ) ) Plaintiff, ) ) vs. ) ) STEVEN JAMES HALL, ) ) Defendant. ) _____ ) | O R D E R |

**THIS MATTER** is before the Court on the Defendant's Motion for Compassionate Release [Doc. 70]; the Government's Response in opposition to the Defendant's Motion [Doc. 76]; and the Government's Motion to Seal [Doc. 78].

**I.     BACKGROUND**

In November 2008, the Defendant Steven James Hall was convicted of a number of child pornography offenses and was sentenced to 210 months' imprisonment. [Doc. 18]. The Defendant is currently incarcerated at FCI Ashland, and his projected release date is October 3, 2022.[1]

---

[1] See https://www.bop.gov/inmateloc/ (last visited Jan. 25, 2021).

On October 28, 2020, the Defendant filed a motion seeking compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) due to the ongoing COVID-19 pandemic. [Doc. 70]. The Government moved to dismiss the Defendant's motion, arguing that he had failed to exhaust his remedies with the BOP prior to filing his motion with this Court. [Doc. 73]. On December 15, 2020, the Court denied the Government's motion and directed the Government to file a response to the Defendant's compassionate release request. [Doc. 75]. The Government filed its Response on January 11, 2021. [Doc. 76]. The Defendant filed his Reply on January 29, 2020. [Doc. 79].

## II. DISCUSSION

### A. Motion for Compassionate Release

Section 3582(c)(1)(A), as amended by The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), permits a defendant to seek a modification of his sentence for "extraordinary and compelling reasons," if the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. §

3582(c)(1)(A). Here, the Court finds that the Defendant has exhausted the necessary administrative remedies. Accordingly, the Court will proceed to address the merits of the Defendant's motion.

As is relevant here, the Court may reduce a defendant's sentence under 18 U.S.C. § 3582(c)(1)(A)(i) for "extraordinary and compelling reasons if "such reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). Even if extraordinary and compelling reasons are found, the Court must also consider the factors set forth in 18 U.S.C. § 3553(a), to the extent that such factors are applicable. Id.

Section 1B1.13 of the United States Sentencing Guidelines sets forth the Sentencing Commission's policy statement applicable to compassionate release reductions. See U.S.S.G. § 1B1.13. As is relevant here, the application note to § 1B1.13 specifies the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is:

3

> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). This policy statement, however, was adopted before the First Step Act, and the Sentencing Commission has not updated the policy statement to account for the fact that defendants are now permitted to file their own motions for compassionate release. In light of these circumstances, the Fourth Circuit Court of Appeals has held that § 1B1.13 is no longer an "applicable" policy statement that constrains the discretion of the district courts in finding that "extraordinary and compelling reasons" exists to warrant a reduction in sentence. See United States v. McCoy, 981 F.3d 271, 282 (4th Cir. 2020) ("By its plain terms, . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)"). Thus, this Court is "empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise." Id. at 284 (quoting United

4

States v. Zullo, 976 F.3d 228, 230 (2d Cir. 2020)). Nevertheless, § 1B1.13 "remains helpful guidance even when motions are filed by defendants." Id. at 282 n.7.

Here, the Defendant claims that he has a number of conditions—including pre-diabetes, obesity, hypertension, and history of a heart attack—that place him at greater risk than the average prisoner for severe illness from COVID-19. A review of the BOP medical records, however, reveals that the Defendant has never been diagnosed as "pre-diabetic." [See Doc. 77: BOP Medical Records]. As for obesity, the medical records indicate that the Defendant has been advised for years to exercise and improve his diet but that he has failed to heed this medical advice. [Id. at 6-7, 13-15]. Nevertheless, the Defendant continues to receive regular medical care and treatment while incarcerated. The Defendant offers no evidence that his obesity would improve, or that he would have any access to regular medical care, if he were to be released.

While the Defendant has had a heart attack in the past, there is no evidence in his medical records to suggest that the Defendant currently suffers from any chronic heart damage, such as heart failure. The

5

Defendant's cardiac issues, therefore, are neither extraordinary nor compelling.

As for the Defendant's hypertension, the CDC has cautioned that people with hypertension might be at an increased risk for severe illness.[2] However, the Defendant's high blood pressure appears to be well-controlled in the prison environment, despite his failure to follow medical advice concerning diet and exercise. [See Doc. 77: Medical Records at 4, 6].

Significantly, the Defendant apparently contracted the coronavirus in December 2020 and has recovered.[3] [See id. at 1]. It appears, therefore, that his preexisting medical conditions did not result in severe illness or prolonged symptoms. Further, the current scientific evidence suggests that reinfection is uncommon in the 90 days after initial infection.[4] The Defendant therefore is at less risk than the general population of suffering from a severe illness due to the virus for at least that time period, if not longer. Additionally,

---

[2] See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed January 25, 2021).

[3] The Defendant denies having had COVID and appears to argue that this positive test result was a false positive. [Doc. 79 at 1-2].

[4] See https://www.cdc.gov/coronavirus/2019-ncov/vaccines/faq.html (last visited Jan. 25, 2021).

6

vaccines are now being distributed, and BOP already has vaccinated nearly 19,000 people.[5] The Defendant's antibodies against the virus from the resolved infection likely will protect him until he receives a vaccine (if he has not received it already). Regardless, the Defendant cannot now meet his burden of establishing that his risk is extraordinary and compelling because he has already contracted—and beaten—the virus .

Finally, the Court notes that the Federal Bureau of Prisons ("BOP") has taken significant measures to protect the health of its inmates. See United States v. Johnson, No. 1:19-cr-00020-MR-WCM, 2020 WL 7646809, at *2-3 (W.D.N.C. Dec. 23, 2020) (Reidinger, C.J.). Taken together, these measures are designed to mitigate sharply the risks of COVID-19 transmission in BOP institutions while allowing BOP to continue to fulfill its mandate of incarcerating those persons sentenced or detained based on judicial orders. Given the BOP's efforts, the fact that the Defendant faces a potential risk of contracting the virus while incarcerated, without more, is not sufficient to justify the relief he requests. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility

---

[5] See https://covid.cdc.gov/covid-data-tracker/#vaccinations (last visited Jan. 25, 2021).

that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").

Even if the Defendant could establish an extraordinary and compelling reason for his release, the Court would still deny the Defendant's motion. Under the applicable policy statement, the Court must deny a sentence reduction unless it determines the defendant "is not a danger to the safety of any other person or to the community." USSG § 1B1.13(2). Additionally, this Court must consider the § 3553(a) factors, as "applicable," as part of its analysis. See § 3582(c)(1)(A); United States v. Chambliss, 948 F.3d 691, 694 (5th Cir. 2020).

Here, the Defendant's crimes were extremely serious. He distributed and traded very graphic child pornography on a regular basis. [Doc. 16: PSR at 4-7]. He also enticed minors (or people whom he believed to be minors) to engage in sexual activity with him and claimed to be a producer of child pornography. [Id. at 3-4]. While the Defendant contends that he might have received a shorter sentence if he had been sentenced today [Doc. 70 at 19], there have been no structural changes to either the applicable law of the Guidelines since 2008 that would result in a shorter sentence. Further, the

8

Defendant offers no evidence to suggest that the § 3553(a) factors should be considered differently today. He cites only his lack of serious disciplinary violations in prison [Doc. 70 at 18]; however, the BOP already takes into account good behavior when calculating his release date. There is no evidence that he has completed any sex offender treatment program or done anything else to reduce the risk of his recidivism while incarcerated.

For all these reasons, the Court concludes that the need for the sentence to reflect the true extent and seriousness of the Defendant's offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, and to protect the public from the Defendant's further crimes militate against a sentence reduction in this case.

Accordingly, the Court concludes that the Defendant has failed to establish an "extraordinary and compelling reason" for a sentence reduction under § 3582(c)(A)(1)(i) and that analysis of the relevant § 3553(a) factors weigh in favor of his continued incarceration. Accordingly, the Defendant's motion for compassionate release is denied.

## B. Motion to Seal

The Government moves the Court for leave to file under permanent seal the BOP medical records [Doc. 77] filed in support of its Response to the Defendant's motion for compassionate release. [Doc. 78].

Before sealing a court document, the Court must "(1) provide public notice of the request to seal and allow interested parties a reasonable opportunity to object, (2) consider less drastic alternatives to sealing the documents, and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives." Ashcraft v. Conoco, Inc., 218 F.3d 288, 302 (4th Cir. 2000). In the present case, the public has been provided with adequate notice and an opportunity to object to the Government's motion. The Government filed its motion on January 11, 2021, and such motion has been accessible to the public through the Court's electronic case filing system since that time. Further, the Government has demonstrated that the subject medical records contain sensitive information concerning the Defendant and that the public's right of access to such information is substantially outweighed by the Defendant's competing interest in protecting the details of such information. See United States v. Harris, 890 F.3d 480, 492 (4th Cir. 2018). Finally, having

10

considered less drastic alternatives to sealing the documents, the Court concludes that sealing of these medical records is necessary to protect the Defendant's privacy interests.

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Compassionate Release" [Doc. 70] is **DENIED**.

**IT IS FURTHER ORDERED** that the Government's Motion to Seal [Doc. 78] is **GRANTED**, and the medical records submitted in support of the Government's Response [Doc. 77] shall be filed under seal and shall remain under seal until further Order of the Court.

**IT IS SO ORDERED.**

Signed: February 1, 2021

Martin Reidinger
Chief United States District Judge